UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

---

**FRANK J. POVOSKI, JR.,**

                              Plaintiff,

                                                          **VERIFIED COMPLAINT**

-against-

                                                          _9:11_ - cv - _00120_

**THOMAS LAVALLEY, DALE ARTUS, JOHN REYELLE
TODD STRACK, THOMAS WOOD, LEEWARD MACEY,
JAMES COOPER, JAMES TYLER, MICHAEL
GIAMBRUNO, KEITH BUSHEY, DAVID TRUDEAU,
RICHARD RENDLE, SCOTT DEFAYETTE, KEVIN HART,
ROBERT HARDEN, RANDAL SMITH, BRUCE
SHUTTS, WILLIAM BISSO, JODY BOULRICE,
RAMOND FURNIA, WILLIAM ALLAN, ROBERT
TRUDEAU, RANDY LAMORA, GEORGE TAMER,
JOHN MILLER, CASEY STRONG , STANLEY GARMAN,
SCOTT ASHLINE, JAMES FACTEAU, JASON PELKEY,
DONALD UHLER, JILL PERRY, RICHARD FLORENTINE,
L. LAPINE, KEN STRADER, RICHARD YOUNG,
RICHARD MAHUTA, JOHN CRUSIE, BRIAN EKLLY,
JERRY WOOD, TARA BROUSSEAU, S. LACY,
KEVIN HICKS, DANIEL CLANCY, ROBERT AYOTTE,
RONALD DUPREE, JAMIE STUART, SHAWN TERRY,
MARGARET LIVSEY, CURTIS DROWN, DARLENE
WALDRON, MELODY CAYEA, DAWN BADGER,
REBECCA BENTLEY, AMBER LOSHWAY, HEATH
BAKER, KANG LEE, VONDA JOHNSON, MARY GILLEN,
LISA CLEMONS, DAVAID AMODIO, R. CARINE,
C. WENDERLICH, D. HENDERSON, HARRY HETRICK,
J.LAMMORA, KELLY BONNER, DR. BERGGREN,
JANE SMITH, J. WALDRON, sued in their individual
capacities** and **BRIAN FISCHER,** sued in his official
and individual capacity,

                              Defendants.

---

## COMPLAINT WITH JURY DEMAND

Plaintiff, Frank J. Povoski Jr., prose for his complaint states the following:

## JURISDICTION

1.      This is a civil action authorized by 42 U.S.C. §1983 to redress the deprivations, under color of state law, of rights secured by the Constitution of the United States.  The court has jurisdiction under 28 U.S.C. § 1331 and 1343 (a)(3).  Plaintiff seeks declaratory relief pursuant to 28 U.S.C. § 2201 and 2202.  Plaintiff's claims for injunctive relief are authorized by 28 U.S.C. §§ 2283, 2284 and Rule 65 of the Federal rules of Civil Procedure.  The court has supplemental jurisdiction over the state law tort claims under 28 U.S.C. § 1367.

## VENUE

2.      The Northern District of New York is an appropriate venue under 28 U.S.C. § 1391(b)(2), because it is where the events giving rise to these claims occurred.

## PARTIES

3.      Plaintiff, Frank J. Povoski Jr., is and was at all times mentioned herein a prisoner of the State of New York in the custody of the New York State Department of Correctional Services ("NYSDOCS").  He is currently confined in Clinton Correctional Facility ("CCF") in Dannemora, New York.

4.      Defendants Thomas LaValley, Dale Artus, Stanley Garman are administrators employed at CCF, Dannemora, New York.  They are sued in their individual capacities.

2

5.      Defendants John Reyelle, Todd Stack, Leeward Macey, James Cooper, James Tyler, Keith Bushey, David Trudeau, Scott Defayette, Kevin Hart, Robert Harden, Randal Smith, Bruce Shutts, Jody Boulrice, Robert Trudeau, Casey Strong, Scott Ashline, Jason Pelkey, Jill Perry, Richard Florentine, Ken Strader, Richard Young, Richard Mahuta, John Crusie, Brian Kelly, Jerry Wood, Robert Ayotte, Ronald Dupree, Jamie Stuart, Shawn Terry, are correctional officers employed at CCF, Dannemora, New York. They are sued in their individual capacities.

6.      Defendants Thomas Wood, Michael Giambruno, Richard Rendle, William Bisso, Raymond Furnia, William Allan, Randy LaMora, George Tamer, John Miller, James Facteau, Donald Uhler, L. LaPine, S. Lacy, Kevin Hicks, Daniel Clancy are correctional supervisors employed at CCF, Dannemora, New York. They are sued in their individual capacities.

7.      Defendants Tara Brousseau, Margaret Livesey, Curtis Drown, Darlene Waldron, Melody Cayea, are civilian employees employed at CCF, Dannemora, New York. They are sued in their individual capacities.

8.      Defendants Dawn Badger, Rebecca Bentley, Amber Lashway, Heath Baker, Kang Lee, Vonda Johnson, Mary Gillen, Lisa Clemons, are civilian Healthcare employees, employed at CCF, Dannemora, New York. They are sued in their individual capacities.

9.      Defendants Kelly Bonner, Dr. Berggren, Jane Smith, N. Woldron are Mental Healthcare providers employed at CCF, Dannemora, New York. They are sued in their individual capacities.

3

10.     Defendants R. Carine, C. Wenderlich, D. Henderson, Harry Hetrick, J. LaMora are employees at Elmira Correctional Facility, Elmira, New York.  They are sued in their individual capacities.

11.     Defendants David Amodio is employed by NYSDOCS in Albany, New York.  He is sued in his individual capacity.

12.     Defendant Brian Fischer is commissioner of NYSDOCS employed in Albany, New York.  He is sued in his official and individual capacity.

13.     All the Defendants have acted, and continue to act, under the color of state law at all times relevant to this complaint to deprive Plaintiff of his constitutional rights as set forth more fully below.

## PREVIOUS LAWSUITS IN FEDERAL COURT

14.     Plaintiff has filed no other lawsuits with the same facts involved in this action.

4

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

15.     Plaintiff has exhausted to the best of his knowledge his administrative remedies with respect to all claims herein, even in the face of his claims of obstruction of the grievance process.

## FACTS

16.     On February 12, 2008, Plaintiff was escorted from Unit-14 to the Office of Mental Health ("OMH"), Hospital, CCF by Correction Officers ("CO") John Reyelle, ~~Krasch~~ *Strack* and Correction Sergeant ("Sgt") Wood to meet with social worker Kelley Bonner. Bonner informed Plaintiff that security staff namely Lt. William Allan had opened Plaintiff's outgoing mail, read it, and informed Bonner that Plaintiff "sounded suicidal" in the letter.   Plaintiff denied he was suicidal and that his mental condition was fine. Plaintiff during the course of the meeting warned Bonner that he had prior problems with the three officers escorting him, and that during the course of the escort to the meeting room had threatened him with physical harm when they "got him in the observation room".   Bonner failed to intervene and moreover, admitted Plaintiff to observation over his objections because, as she put it, "security had her hands tied", and not because she believed Plaintiff was a danger to himself.

17.     Plaintiff was then escorted (handcuffed and waist chained) to OMH observation room seven (7) and during the escort officers again threatened and verbally abused him.   When placed in the observation room, Reyelle started punching Plaintiff in the head and face.   Strack then poked and punched Plaintiff in the eye.   Reyelle then

5

choked Plaintiff until he passed out.  Plaintiff was then intentionally, maliciously and sadistically assaulted and battered by all three officers as they punched and kicked him with closed fists and feet in the face, head, groin, back and legs causing multiple physical injuries.

18.    The resulting injuries included a lacerated ear, lacerated eye, contusions to the face and body, internal bleeding, eye injury, groin injury, knee injury, foot injury, and a closed head injury with resulting short and long term symptoms.

19.    Immediately after the assault and battery on February 13, 2008, Plaintiff requested emergency medical care of at least two medical/mental health staff members doing medication rounds with their escort, those employees being Nurse Dawn Badger, Rebecca Bentley, and [Co Leoward May] , John Smith, Nurse Waldron, Jane Smith and those requests were summarily denied intentionally in their attempt to "cover-up" the resulting injuries of the foregoing assault and battery.  This staff was deliberately indifferent to Plaintiff's medical care when knowing of his serious physical injuries intentionally ignored his requests, and moreover failed to treat him so that no documentation of the injuries of the assault and battery would be entered into his medical records.

20.    On  February  13,  2008,  Plaintiff  was  escorted  handcuffed  and waistchained from observation room 7 to an interview area, OHM, Hospital, CCF. Plaintiff met with Dr. Berggren for the purpose of evaluation and Plaintiff's continued observation.  Plaintiff was also being escorted by COs Reyelle, James Cooper and James Tyler to the interview.

6

21. Upon entering the interview room, Plaintiff told Berggren that he had been assaulted by his current escort Reyelle and two other officers, showed her the injuries that were visible, and asked for medical attention. The escorting officers immediately suspended the interview, and began escorting him back to the observation room where they began intentionally, maliciously and sadistically to assault and batter Plaintiff when they repeatedly struck Plaintiff with closed fists to his back and telling him that "we are going to f__k you up now, since we told you not to say anything about yesterday".

22. They continued the assault into the cell where they uncuffed Plaintiff then the three officers rushed the cell and Reyelle continued the assault. Plaintiff fell unconscious and upon waking was cuffed this time behind his back and was being dragged to a nearby medical exam room. Plaintiff's cuffed arms were forced high in back and Reyelle placed him in a full nelson hold, causing injury to both shoulders. In the exam room he was forced upon a bed where Rayelle continued to punch Plaintiff in the head and face. The other officers in the room, Cooper and Tyler, and a few new arriving ones began twisting Plaintiff's wrists, kicking in the rear and legs, stomping on his bare feet, then lifting his right foot and striking him on that foot and heel with a wooden baton. Other officers participating in the assault were Michael Giambruno, Keith Bushey, David Trudeau, Richard Rendle. As a result of this savage and brutal attack, Plaintiff sustained numerous injuries to both shoulders, his right wrist, left ear, head, and right foot, along with many contusions and bruising.

23. Photographs were taken of some injuries, and although a nurse did briefly speak with Plaintiff, no medical attention was provided.

7

24.     Over the next two weeks, Plaintiff put in daily sick call notices for medical care and Nurse (PA) Amber Lashway did see that Plaintiff was x-rayed for broken bones no medical treatment was provided.

25.     These incidents were grieved to the Inmate Grievance Program as grievance numbers CL-56609-08, CL-56717-08 and consolidated CL-56743-08.

26.     Moreover, Dr. Breggren, Kelley Booner, Dale Artus, and Brian Fischer failed to provide Plaintiff with reasonable protection against the "reasonable foreseeable" attacks by staff at CCF, when Plaintiff and Plaintiff's family numerous times through numerous channels and methods of communication had informed the above Defendants of at least 8 other previous assaults by staff against Plaintiff person, the threats made by staff of continued harm, and his belief that these attacks would continue if not checked by administration of CCF and NYSDOCS (checked by disciplinary measures against officers/staff or Plaintiff transferred from facility).

27.     Berggren and Booner giving that Plaintiff warned them of the treats of assault by staff and that an assault had taken place hours earlier, their failure to provide Plaintiff with any protection and in fact put him into observation which is a know area of high assaults by staff is particularly disturbing, and showed their "reckless disregard" for Plaintiff's safety in their failure to "act reasonably" in response to this known danger.

28.     On or about January 31, 2008, Plaintiff discovered that CO Scott Defayette was obstructing his legal mail.  Defayette for a period had obstructed most of Plaintiff's legal filings and correspondence resulting in missed deadlines and ultimate

8

dismissal of those cases. Defayette did this in retaliation for an incident that occurred in August 2007. see Inmate Grievance CL-56634-08.

29. On January 31, 2008, CO Randal Smith came to Plaintiff's cell with two other officers to search his cell. Smith escorted Plaintiff cuffed to the shower cell gate where he intentionally, maliciously, and sadistically slammed Plaintiff into the gate causing physical injury to Plaintiff's right shoulder.

30. As a result of this unprovoked assault and batter, Plaintiff suffered injury to his shoulder resulting in swelling, pain and disability. see Inmate Grievance CL-56582-08, CL-56635-08.

31. The above assault and batteries are just three incidences in a series of assaults and batteries perpetrated against Plaintiff by a small group of officers unofficially lead by Sgt. Richard Rendle known as the "beat down crew". Rendle and crew established a vendetta against Plaintiff in 2007 shortly after Plaintiff arrived at facility after Plaintiff grieved one of the "crew" members, CO Kevin Hart (and later filed lawsuit). This retaliation by these officers consists primarily of assaults and writing Plaintiff up on fictitious misbehavior reports. On amendment of complaint Plaintiff will include full detail but for now only the date of the assault and staff involved are listed:

| Date | Staff |
|---|---|
| April 27, 2007 | Kevin Hart |
| May 18, 2007 | Kevin Hart |
| August 20, 2007 | Robert Harden, John Reyelle, Randal Smith |
| August 24, 2007 | Richard Rendle, Bruce Shutts |
| August 24, 2007 | Richard Rendle, Bruce Shutts, William Bisso |
| August 24, 2007 | Richard Rendle |

9

October 21, 2007                              Jody Boulrice, Raymond Furnia

32.    Upon amendment of complaint, Plaintiff will include full factual allegation, which fully supports the "continuing wrong" doctrine as to why the above seven assaults should be within the limitation of this action.

33.    Coincidental to the assault and batteries of 2-12-2008, 2-13-2008, 1-31-2008, 10-21-2007, 8-24-2007(3), 8-20-2007, 5-18-2007, 5-18-2008 and 4-27-2008, were outright denials of access to medical care by personnel, medical, mental health and otherwise to "cover up" these assaults by not reacting and thus not reporting injuries and treatment thereof.  These employees are Dawn Badger, Rebecca Bentley, Heath Baker, Kang Lee, Vonda Johnson, Mary Gillen, and Lisa Clemons.

34.    On or about February 12, 2008, William Allan and Margaret Livsey opened and read Plaintiff's outgoing mail without authorization from the superintendent or cause that suspicious of illegal activities were occurring and in retaliation of Plaintiff filing grievances and pursuing lawsuits.  Upon reading of this mail, Allan alerted mental health social workers Kelley Bonner that Plaintiff was suicidal, contrary to the facts.  As a result of this first amendment violation Plaintiff was brought to OMH observation and subsequently assaulted by staff and written up falsely on a misbehavior report, in effect direct causation of the violations of his eight amendment and fourteenth amendment rights.

35.    On January 30, 2008, Richard Rendle and Scott Defayette brought forth a "false" misbehavior report against Plaintiff alleging he "forged his inmate disbursement form".  This charge was brought in retaliation of Plaintiff filing grievances, pursuing

10

lawsuits and other activities protected by the constitution, against Rendle, Defayette and other members of Rendle's E-block based "beat down crew" for their tortuous acts and constitutional violations against Plaintiff.

36.   Plaintiff in a disciplinary hearing conducted on February 7, 2008 by Hearing Officer Curtis Drown was found guilty of charge and was given seven months SHU time, two months suspension and six months loss of good time. The Hearing Officer violated Plaintiff's "due process" rights in the hearing when he violated numerous procedural protections guaranteed under the fourteenth amendment.

37.   On February 13, 2008, COs James Tyler and John Reyelle wrote Plaintiff up on a "false" misbehavior report alleging "violent conduct" and "direct order" when they placed him in the OHM observation room seven. This report was written in an attempt to mitigate or "cover-up" the assault and battery they inflicted upon Plaintiff. Without this report by Tyler and Reyelle there would have been no possible explanation as to the severity of Plaintiff's injuries.

38.   A disciplinary hearing was conducted on February 27, 2008 through March 3, 2008 by Scott Drollette finding Plaintiff guilty of the charges and was given 120 days SHU time and four months loss of good time. The Hearing Officer in the course and conduct of the Hearing violated numerous "due process" protections guaranteed to Plaintiff under the fourteenth amendment.

39.   Additionally, the misbehavior report by Tyler and Reyelle was directly motivated as retaliation for Plaintiff filing grievances, pursuing lawsuits and other activities protected by the constitution against themselves, Rendle and other members

11

of Rendle's "beat down crew", for their prior tortuous acts and constitutional violations against Plaintiff.

40.    On February 14, 2008, CO Robert Trudeau wrote Plaintiff up on a "false" misbehavior report alleging he had too many stamps in his cell. This report was written in retaliation for Plaintiff grieving officers and filing lawsuits and other activities protected by the constitution, against officers within the Unit-14 SHU.

41.    A disciplinary hearing was conducted on February 27, 2008, again in retaliation for Plaintiff filing grievances and pursing lawsuits by Randy LaMora finding Plaintiff guilty of the charges and was given 60 days of SHU time. The Hearing Officer in the course and conduct of the Hearing violated numerous "due process" protections guaranteed to Plaintiff under the fourteenth amendment.

42.    As alleged foregoing in this Complaint regarding the assaults and batteries, these constitutional violations begin in 2007 when Plaintiff filed a grievance against Kevin Hart and fully supports the "continuing wrong" doctrine and should be within the limitation of this action.

43.    The Plaintiff in retaliation for him filing grievances and pursuing lawsuits was written up on "false" misbehavior reports which violated his constitutional rights on the following dates by the following officers:

| DATE OF INCIDENT | DATE OF HEARING | OFFICER |
|---|---|---|
| 4-24-07 | 5-04-07 | Kevin Hart |
|  | (John Miller) | George Tamer |
| 6-29-07 | 7-04-07 | Casey Strong |
|  | (John Miller) |  |
| 7-29-07 | 8-10-07 | Scott Ashline |

12

(Stanley Garman)
7-29-07                    8-14-07                    George Tamer
                          (Curtis Drown)

44.    As it is alleged under the continuing wrong doctrine New York State
Officials including those at Elmira Correctional Facility began a systematic retaliation
against Plaintiff for his alleged crimes he was incarcerated for, namely arson of police
vehicles, allegations of arson against New York State police vehicles, and allegations of
escape from NYSDOCS and local jail.

45.    On June 24, 2006, Plaintiff was placed in the SHU at ECF, ordered by Lt.
R. Carine after he alleged in a "false" misbehavior report that Plaintiff "conspired to
escape", "possessed escape paraphernalia", "assaulted staff", "possessed contraband",
and "made threats".

46.    On June 23, 2006, another "false" misbehavior report was authored by
David Amodio claiming that Plaintiff "solicited a civilian", "violated correspondence", and
"exchanged Personal Identification Number", again wrongfully confining him to the SHU,
both misbehavior reports being retaliatory in nature for Plaintiff's crimes and his attempt
to proceed to trial in the matter. Plaintiff was scheduled to go to trial in Monroe County
during the summer of 2006, and the loss of his legal papers, the deprivation caused to
him as a result of being confined in the SHU, resultantly caused him to make a plea
against plans to proceed to trial.

47.    A disciplinary hearing was commenced on July 24, 2006 by Captain
Wenderlich for both misbehavior reports, and during the course and conduct of the
hearing, Wenderlich violated a number of Plaintiff's clearly established procedural "due

13

process" rights. Wenderlich found Plaintiff guilty on all charges and sentenced him to three (3) years SHU confinement with loss of two (2) years good time.

48.    If Plaintiff's due process rights had been honored SHU placement would not have resulted. Plaintiff filed an appeal with the Director of Special Housing, Donald Selsky who recognized that Plaintiff's rights were violated and on September 20, 2006 reversed the determinations of both misbehavior reports and their associated hearing.

49.    Immediately in retaliation as above mentioned and for Plaintiff's successful reverse, Wenderlich instructed Harry Hetrick to immediately (and without releasing Plaintiff from SHU) commence an administrative segregation proceeding against Plaintiff.    DSS Henderson commenced the Hearing on October 4, 2006 and on November 1, 2006 confined Plaintiff to the SHU indefinitely.

50.    If Plaintiff's due process rights had been honored, SHU placement would not have resulted. Plaintiff filed an appeal with Selsky, and Selsky recognized the due process violations and also reversed this determination on January 22, 2007.

51.    On January 24, 2007, Plaintiff was being transferred to CCF (he was actually released by Selsky to General Population effective January 22, 2007, but was still being held in the SHU pending transfer), when he was assaulted and battered by CO J. LaMora and to "cover" this up, and in further retaliation of Plaintiff for grievances he filed at Elmira, and the fact he had just received a reversal on all "false" misbehavior reports and recommendations written against him, J. LaMora wrote yet another "false" misbehavior report against Plaintiff for "Direct Order" and "Frisk Procedures".

14

52.    Upon Plaintiff's transfer to CCF, Plaintiff was placed directly into the SHU. The misbehavior report was summarily dismissed by Curtis Drown on February 8, 2007. Plaintiff on February 10, 2007, was returned to general population after spending 224 days in SHU under "atypical and significant hardship" as defined by and under Sandin, that departs significantly from those of general population, such as no physical access to a law library, poor food, filthy cell conditions, 23+ hour lockins, no programming, limited recreation, limited access to media materials, limited visitation, no telephone access, no commissary, no packages, limited clothing and footwear, limited access to showers and other hygiene, not to mention a very noisy environment filled with many mentally ill inmates, who don't' shower or don't clean their cells causing insects and mice to abound, basically an environment that allows only the bare necessities to survive and an environment that promotes abuses by staff not "tolerated" by inmates in general population.

53.    On March 21, 2008, Margaret Livesy and William Allan wrote Plaintiff up on a "false" misbehavior report alleging he violated a "direct order" and facility correspondence". This report was written in retaliation for Plaintiff filing grievances and pursing lawsuits and other activities protected by the constitution.

54.    A disciplinary hearing was conducted on April 3, 2008, again in retaliation for Plaintiff filing grievances and pursing lawsuits, by John Miller finding Plaintiff guilty of the charges and was given 30 days keeplock. The Hearing Officer in the course and conduct of the hearing violated numerous "due process" protections guaranteed to Plaintiff under the fourteenth amendment.

15

55.     The below mentioned misbehavior reports have been written in retaliation as "false" and the disciplinary hearing violating due process.

| Incident Date | Hearing Date/Officer | Writer |
|---|---|---|
| 4-3-08 | 4-9-08/Randy LaMora | William Allan Margaret Livsey |
| 4-7-08 | 4-13-08/James Facteau | Jason Delkey David Trudeau |
| 4-15-08 | 5-7-08/James Facteau | William Allan Margaret Livsey |
| 6-9-08 | 6-24-08/ Donald Uhler | Jill Perry |
| 11-2-08 | None/None | Richard Florentine* |
| 7-28-09 | 8-5-09/Lt. LaPine* | Margaret Livsey William Allan |
| 7-7-10 | 7-12-10/John Miller | Ken Strader Richard Young |
| 11-24-10 | 12-6-10/SM Lacy | Richard Mahuta John Crusie Brian Kelly |
| 11-27-10 | None/None | Jerry Wood |
| 12-6-10 | 12-29-10/SM Lacy | William Allan Margaret Livsey |

(These above mentioned Misbehavior Reports/Hearings will be expounded upon in Amended Complaint)

56.     During the period from approximately July 2007 until present and under the "continuing harm" doctrine Tara Brousseau, Dale Artus, Thomas Lavalley, Stanley Garman, William Bisso and other after-mentioned have violated Plaintiff's first amendement rights directly and by way of retaliation for Plaintiff filing grievances and pursing lawsuits his first and fourteenth amendment rights, for intentionally obstructing the Inmate Grievance Program at CCF.   These Defendants during this period, especially Brousseau who is the IGP Supervisor at CCF, upon filing of grievance by Plaintiff, failed to process them per Directive #4040, obstructed many entirely, not allowing Plaintiff to address his constitutional violations by Defendants above mentioned

16

administratively to satisfy the requirements of the Prisoner's Litigation Reform Act, in order to redress his issues regarding these violations in federal court.

57.    During the period from approximately July 2007 until present and under the "continuing harm" doctrine, employees assigned to the mailroom at CCF, SHU and E-block, William Bisso, Kevin Hicks, Daniel Clancy, William Allan, Robert Ayotte, Ronald DuPree, Jamie Stuart, Jody Boulrice, Darlene Waldron, Melody Cayea, Margaret Livsey, Jill Perry, Richard Rendle, Scott Pefayette, Robert Harnden, Shawn Terry, Randal Smith, and Bruce Shutts, obstructed Plaintiff's mail, legal mail, and grievances in retaliation for him filing grievances and lawsuits, in effect to prevent him from filing grievances and pursing lawsuits, did in fact cause him harm by causing him to miss legal deadlines, obstructed filings and services in totality, disrupted his communications to his attorney and the courts, so that those filings were not made, and Defendants not served and barred him or caused outright dismissals in various criminal and civil actions.

## COUNT ONE: EXCESSIVE FORCE, CRUEL AND UNUSUAL PUNISHMENT

58.    Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

59.    Defendants above mentioned, exercised and acted "maliciously and sadistically" in their excessive forced used upon the Plaintiff on the dates of April 27, 2007, May 18, 2007, August 20, 2007, August 24, 2007 (3 incidents), October 1, 2007, January 31, 2008, February 12, 2008, February 13, 2008. The Defendants, because of

17

the April 27, 2007 incident with Kevin Hart where Plaintiff filed grievances and pursed litigation created an ongoing retaliatory vendetta against Plaintiff and in an ongoing series of related excessive forces intentionally, cruelly and with great malice in each case beat the Plaintiff, inflicting physical injury and infliction of emotional distress, in a continuing wrong that began on April 27, 2007.

## COUNT TWO:
## ASSAULT, BATTERY, INFLICTION OF EMOTIONAL DISTRESS BOTH INTENTIONAL AND NEGLIGENT

60.     Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

61.     Defendants above mentioned, exercised and acted "maliciously and sadistically" in their assault and battery of the Plaintiff on the dates of April 27, 2007, May 18, 2007, August 20, 2007, August 24, 2007 (3 incidents), October 1, 2007, January 31, 2008, February 12, 2008, February 13, 2008.  The Defendants, because of the April 27, 2007 incident with Kevin Hart where Plaintiff filed grievances and pursed litigation created an ongoing retaliatory vendetta against Plaintiff and in an ongoing series of related assaults and batteries, intentionally, cruelly and with great malice in each assault inflicted physical injury and infliction of emotion distress both, intentionally and negligently in a continuing wrong that began on April 27, 2007.

## COUNT THREE:
## DELIBERATE INDIFFERENCE TO MEDICAL CARE

62.     Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

18

63.    Defendants above mentioned, exercised deliberate indifference to Plaintiff's serious medical conditions after he was assaulted by the Defendants. The Plaintiff made numerous requests for emergency medical care and medical care after each of the above mentioned assaults, and these requests were in effect disregarded by Defendants and no care was provided; in a continuing harm that began on April 27, 2007.

### COUNT FOUR:
### DELIBERATE INDIFFERENCE TO MEDICAL CARE IN RETALIATION FOR FILING GRIEVANCES AND PURSING LAWSUITS

64.    Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

65.    Defendants, in above mentioned, exercised deliberated indifference to Plaintiff's serious medical conditions in retaliation for Plaintiff filing grievances and pursuing lawsuits against above mentioned Defendants and other employees of NYSDOCS, especially after he was assaulted by Defendants. The Plaintiff made numerous requests for emergency medical care and medical care after each of the above mentioned assaults and these requests were disregarded by Defendants and no care was provided in an ongoing retaliatory vendetta causing continuing harm from the earliest denial which occurred in April 27, 2007.

### COUNT FIVE:
### RETALIATION AGAINST PLAINTIFF BY MISUSE OF THE DISCIPLINARY REPORTING PROCESS

66.    Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

19

67.   Defendants, above mentioned, in a series of continued wrong predicated as retaliation for Plaintiff's alleged crime, his anti-authority attitude, his attempts to litigate those to trial, and for his filing grievances and pursing lawsuits, intentionally wrote "false " misbehavior reports which resulted in his placement in confinement, cause significant disruptions in his ability to litigate his criminal matters, caused significant disruptions in his redress of the NYSDOCS in civil matters such as assault, batteries, and property litigation, disruption of his ability to litigate against these very "false" misbehavior reports and the resulting due process violations in the determination process, generally deprived him of many liberties he would have afforded in general population, housed him in atypical and significant hardship, damaged his property, put him in situations resulting in his physical harm from inmates and staff, subjected Plaintiff to the risk of significant sanction, and cause him great resulting emotional distress.

## COUNT SIX:
## FOURTEENTH AMENDMENT DUE PROCESS VIOLATION
## ILLEGAL SHU TIME

68.   Plaintiff re-alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

69.   Defendants, above mentioned, in a series of continuing harm predicated upon Plaintiff's alleged crime, and anti- authority, and his attempts to litigate those to trial, and for filing grievances and pursuing lawsuits, in retaliation placed Plaintiff in the SHU, the defendant responsible for his confinement in the SHU violated his due process rights during the hearing process which if not violated that confinement may not have occurred, Plaintiff in exhausting his remedies reversed said determinations

20

resulting in his continued confinement, Plaintiff was therefore injured by his confinement of 224 days under atypical and significant hardship in the SHU.

### COUNT SEVEN:
### FOURTEENTH     AMENDMENT     DUE     PROCESS
### VIOLATIONS OF DISCIPLINARY HEARING PROCESS

70.    Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

71.    Defendants, above mentioned, in a series of continuous wrong predicated upon Plaintiff's alleged crime, his anti-authoritative actions, his attempts to litigate those to trial and for filing grievances and pursuing lawsuits, in retaliation placed Plaintiff in confinement in the SHU or keeplock; the defendant responsible for this confinement violated his due process rights during the hearing determination process, which if not violated that confinement may not have occurred, Plaintiff exhausted his administrative and state remedies with various success in reversal of said determinations, although was still confined, Plaintiff was therefore injured directly and indirectly (effecting his release) by this confinement under atypical and significant hardship in confinement.

### COUNT EIGHT:
### OBSTRUCTION     OF     GRIEVANCE     PROCESS     AS
### RETALIATION

72.    Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

73.    Defendants, above mentioned in a series of continuous wrongs predicated against defendant as retaliation for filing grievances and pursuing lawsuits intentionally obstructed the Inmate Grievance Program or failed to adequately put in place measures

and controls to ensure proper management thereof and cause most of Plaintiff's grievances from April 2007 until present to go unanswered, violating his 1st amendment right freedom of speech and since exhaustion of the grievance process is essential to bring Plaintiff's (first amendment redress of government) constitutional actions to federal court, Defendants actions denied such redress and/or delayed it beyond limitations, including actions presented herein.

### COUNT NINE:
### OBSTRUCTION OF GRIEVANCE PROCESS

74.   Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

75.   Defendants, above mentioned in a series of continuous wrongs obstructed the Inmate Grievance Program intentionally and/or failed to adequately put in place measures and controls to ensure proper management thereof and cause most of Plaintiff's grievances from April 2007 until present to go unanswered, violating his 1st amendment right freedom of speech and since exhaustion of the grievance process is essential to bring constitutional actions to federal court, Defendants actions denied Plaintiff of redress of the government or delayed such redress beyond limitations, including actions presented herein.

### COUNT TEN:
### OBSTRUCTION, DELAY, AND IMPEDIMENT OF CORRESPONDENCE BOTH PRIVILEGED AND OTHERWISE AS RETALIATION

76.   Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

77. Defendants, above mentioned in a series of continuous wrongs predicated against Plaintiff as retaliation for filing grievances and pursuing lawsuits intentionally obstructed Plaintiff's legal and other correspondence intentionally to frustrate and impede, obstruct, delay his criminal, civil litigation (criminal appeals, Article 785 for disciplinary hearings, and federal actions), or litigation relative to his confinement violating his 1st amendment right, and causing actually damage.

### COUNT ELEVEN:
### OBSTRUCTION, DELAY AND IMPEDIMENT OF CORRESPONDENCE BOTH PRIVILEGED AND OTHERWISE

78. Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

79. Defendants, above mentioned in a series of continuous wrongs obstructed Plaintiff's legal and other correspondence intentionally to frustrate and impede, obstruct, delay his criminal and civil litigation (criminal appeals, Article 785 for disciplinary hearings, and federal actions), or litigation relative to his confinement violating his 1st amendment right, and causing actually damage.

### COUNT TWELVE:
### DELIBERATE INDIFFERENCE TO SAFETY OF INMATE

80. Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

81. Defendants, above mentioned, were deliberately indifferent and/or recklessly disregarded the safety of Plaintiff by failing to act reasonably in response to

23

dangers that were obvious and explicitly warned to Defendants by Plaintiff and his family, specifically the dangers of assaults and batteries by correction officers at CCF.

## COUNT THIRTEEN:
## DENIAL OF ACCESS TO THE COURTS

82.    Plaintiff re alleges and incorporates by reference paragraphs 16 through 57 as if fully stated herein.

83.    Defendants, above mentioned, in a series of continuous harms, predicated against Plaintiff in retaliation for filing grievances and otherwise, by the course of beatings, obstructions and other impediments frustrated and impeded the preparation, authoring, and filing of some causes of actions herein beyond the statue of limitations thus precluding Plaintiff from damages he would have sought relating to that claim of action.

## RELIEF REQUESTED

**WHEREFORE**, the Plaintiff requests that the Court grant the following relief:

24

(A)   Issue an injunction ordering defendants to release Plaintiff from his SHU confinement and expunge all references from his record, transfer to another NYSDOCS correctional facility to prevent further injury to Plaintiff and address his medical issues.

(B)  Award compensatory damages jointly and severally against defendants in the amount of Five Million Dollars.

(C)  Award punitive damages jointly and severally against Defendants in the amount of Two and One Half Million Dollars.

January 25, 2011

Respectfully submitted,

Frank J. Povoski, Jr.
PO Box 2001
Dannemora, New York 12929

25

# AFFIDAVIT OF MAILING

STATE OF NEW YORK )
                              )  SS. :
COUNTY OF CLINTON )

　　　　Frank J Povoski Jr., being duly sworn, deposes and says that he is the plaintiff, pro se, in the 42 U.S.C. 1983 action entitled Frank J. Povoski Jr v. Thomas LaValley, et al., verified on January 25, 2011 has placed / will place the complaint for mailing with correctional officer ___ Jill Perry ___, when he/she does the Unit-14 Law Library / Mail pickup round on January 27, 2011, establishing this date as the filing date of this verified complaint under the "mailbox" rule, as mail sent from facility many times is obstructed or delay at times up to one week.

Frank J. Povoski Jr
PO Box 2001 / SHU
Dannemora, NY 12929

Sworn to before me this 27
day of January, 2011

NOTARY PUBLIC
Harry D. Durgan
Notary Public, State of New York
No. 01DU6008379
Qualified in Clinton County
Commission Expires ___ 2014

Cert Mail
7010 0290 0003 0595 3350

## VERIFICATION

STATE OF NEW YORK     )
                   ) SS.:
COUNTY OF *Clinton*     )

    *Frank J. Povoski Jr*, being duly sworn, deposes and says that he is the ~~petitioner~~ *plaintiff* in the within proceeding; that he has read the foregoing ~~petition~~ *verified complaint* and knows the contents thereof; that the same is true to his knowledge, except as to the matters alleged therein on information and belief and that as to those matters he believes them to be true.

                            *[signature]*
                            [Sign Name]

                          *Frank J. Povoski Jr*
                            [Print Name]

Sworn to before me this 25
day of *Jan* 20 11.

    *[signature]*
    NOTARY PUBLIC

        Harry D. Durgan
    Notary Public, State of New York
        No. 01DU6008379
      Qualified in Clinton County
    Commission Expires