UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -
FRANK J. POVOSKI, JR.,

                                    Plaintiff,

                                                              9:11-CV-0120
         -v-                                                  (DNH)(DEP)

THOMAS LAVALLEY; DALE ARTUS;
JOHN REYELLE; TODD STRACK;
THOMAS WOOD, et al.,

                                    Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:

FRANK J. POVOSKI, JR.
05-B-2531
Clinton Correctional Facility
P.O. Box 2002
Dannemora, NY 12929
Plaintiff, pro se

DAVID N. HURD
United States District Judge

## DECISION & ORDER

### I.    Background

     The Clerk has sent a pro se civil rights complaint filed pursuant to 42 U.S.C. § 1983,

together with an application to proceed in forma pauperis, by plaintiff Frank J. Povoski.  Dkt.

Nos. 1, 2.  Plaintiff's complaint alleges wrongdoing by seventy-three defendants at various

correctional facilities spanning a period of time beginning in 2006 to the date the complaint

was filed.  Dkt. No. 1.  For a complete statement of plaintiff's claims, refer to the complaint.

## II.    Initial Screening

After reviewing the information that plaintiff provided in his in forma pauperis application, Dkt. No. 2, plaintiff meets the financial criteria for commencing this action in forma pauperis.

Since plaintiff's in forma pauperis application will be granted, the sufficiency of the allegations that he has set forth in his complaint must be considered in light of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b).  Section 1915(e) directs that, when a plaintiff seeks to proceed in forma pauperis, "(2) . . . the court shall dismiss the case at any time if the court determines that – . . . (B) the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief."  28 U.S.C. § 1915(e)(2)(B).[1]  Thus, although the court has the duty to show liberality toward pro se litigants, see Nance v. Kelly, 912 F.2d 605, 606 (2d Cir. 1990) (per curiam), and should exercise "extreme caution . . . in ordering sua sponte dismissal of a pro se complaint before the adverse party has been served and both parties (but particularly the plaintiff) have had an opportunity to respond,"  Anderson v. Coughlin, 700 F.2d 37, 41 (2d Cir. 1983), the court also has a responsibility to determine that a claim is not frivolous before permitting a plaintiff to proceed with an action in forma pauperis.[2]

Likewise, under 28 U.S.C. § 1915A, a court must review any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a

---

[1]  To determine whether an action is frivolous, a court must look to see whether the complaint "lacks an arguable basis either in law or in fact." Neitzke v. Williams, 490 U.S. 319, 325 (1989).

[2]  "Dismissal of frivolous actions pursuant to 28 U.S.C. § 1915(e) is appropriate to prevent abuses of the process of the court," Nelson v. Spitzer, No. 9:07-CV-1241, 2008 WL 268215, at *1 n.3 (N.D.N.Y. Jan. 29, 2008) (citation omitted), as well as "to discourage the filing of, and waste of judicial and private resources upon, baseless lawsuits." Neitzke, 490 U.S. at 327.

governmental entity" and must "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint . . . is frivolous, malicious, or fails to state a claim upon which relief may be granted; or . . . seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b); see also Carr v. Dvorin, 171 F.3d 115, 116 (2d Cir. 1999) (per curiam) (holding that § 1915A applies to all actions brought by prisoners against government officials even when plaintiff paid the filing fee); Abbas v. Dixon, 480 F.3d 636, 639 (2d Cir. 2007) (stating that both §§ 1915 and 1915A are available to evaluate prisoner pro se complaints).

Additionally, when reviewing a complaint, a court may also look to the Federal Rules of Civil Procedure. Rule 8 provides that a pleading which sets forth a claim for relief shall contain, inter alia, "a short and plain statement of the claim showing that the pleader is entitled to relief." See Fed. R. Civ. P. 8(a)(2). The purpose of Rule 8 "is to give fair notice of the claim being asserted so as to permit the adverse party the opportunity to file a responsive answer, prepare an adequate defense and determine whether the doctrine of res judicata is applicable." Hudson v. Artuz, No. 95 CIV. 4768, 1998 WL 832708, at *1 (S.D.N.Y. Nov. 30, 1998) (quoting Powell v. Marine Midland Bank, 162 F.R.D. 15, 16 (N.D.N.Y. 1995) (McAvoy, C.J.) (citations omitted)).

A court should not dismiss the complaint if the plaintiff has stated "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009). While the court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a

court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citing Twombly, 550 U.S. at 555). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show[n]'-'that the pleader is entitled to relief.'" Iqbal, 129 S. Ct. at 1950 (quoting Fed. R. Civ. P. 8(a)(2)). Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Iqbal, 129 S. Ct. at 1949. Thus, a pleading that contains only allegations which "are so vague as to fail to give the defendants adequate notice of the claims against them" are subject to dismissal. Sheehy v. Brown, 335 F. App'x 102, 104 (2d Cir. 2009).

## III. Review of the Complaint

Plaintiff alleges a multitude of allegations against seventy-three defendants spanning a period of five years. The allegations will be discussed in depth below.

### A. Claims Which Pre-Date January 25, 2008

Plaintiff brings this action under 42 U.S.C. § 1983, which establishes a cause of action for "the deprivation of any rights, privileges, or immunities secured by the Constitution and laws" of the United States by a person acting under color of state law. Wilder v. Virginia Hosp. Ass'n, 496 U.S. 498, 508 (1990) (quoting § 1983; see also Myers v. Wollowitz, No. 95-CV-0272, 1995 WL 236245, at *2 (N.D.N.Y. Apr. 10, 1995) (McAvoy, C.J.) (Section 1983 "is the vehicle by which individuals may seek redress for alleged violations of their constitutional rights.").

Claims arising under § 1983 are governed by state statutes of limitations. Wilson v. Garcia, 471 U.S. 261, 266-67 (1985). The "applicable statute of limitations for section 1983

actions arising in New York requires claims to be brought within three years." Pinaud v. Cnty. of Suffolk, 52 F.3d 1139, 1156 (2d Cir. 1995). Under federal law, generally, a claim arising under § 1983 "accrues" when the plaintiff "knows or has reason to know of the injury which is the basis of his action." Pearl v. City of Long Island Beach, 296 F.3d 76, 80 (2d Cir. 2002); see also Covington v. City of N.Y., 916 F. Supp. 282, 285 (S.D.N.Y. 1996) (same). "Thus, in determining when the statute begins to run, the proper focus is on the time of the [illegal] act, not the point at which the consequences of the act become painful." Covington, 916 F. Supp. at 285 (internal quotations omitted). In "rare and exceptional" cases, the doctrine of equitable tolling may be invoked to defeat a defense that the action was not timely filed. See Abbas v. Dixon, 480 F.3d 636, 642 (2d Cir. 2007). The plaintiff bears the burden of establishing equitable tolling. Id.

Plaintiff's complaint was filed on January 25, 2011[3]—therefore, any claims that predate January 25, 2008, are time-barred, unless plaintiff can demonstrate that the limitations period was tolled for a sufficient time period, or allege some other basis to demonstrate that claims arising prior to January 25, 2008, would be timely. See id. at 640-41.

Plaintiff alleges the following events that occurred while he was incarcerated at Elmira Correctional Facility ("Elmira"). On June 23, 2006, defendant Amadio issued plaintiff a false misbehavior report and "wrongfully" confined plaintiff in SHU. Dkt. No. 1 at 33-34. On June 24, 2006, defendant Carine issued plaintiff a false misbehavior report and placed plaintiff in

---

[3] An inmate's complaint is deemed "filed" when it is delivered to prison officials. Dory v. Ryan, 999 F.2d 679, 682 (2d Cir. 1993); Pritchard v. Kelly, 9:98-CV-0349, 2000 WL 33743378, at *2 n.2 (N.D.N.Y. Oct. 3, 2000) (Sharpe, M.J.). The date the plaintiff signed the complaint is presumed to be the date the plaintiff gave the complaint to prison officials to be mailed. Mingues v. Nelson, 96-CV-5397, 2004 WL 324898, at *3 (S.D.N.Y. Feb. 20, 2004). In this case, the date on plaintiff's complaint is January 25, 2011, therefore the complaint is deemed to have been filed on that date for purposes of determining the applicable limitations period. Dory, 999 F.2d at 682.

SHU. Id. at 33. Plaintiff claims that both of the aforesaid misbehavior reports were issued in retaliation "for plaintiff's crimes and his attempt to proceed to trial in the matter." Id. at 34. Plaintiff intended to go to trial in the summer of 2006, but his legal papers were lost because he was confined in SHU, and as a result plaintiff had to enter a plea rather than go to trial. Id. Defendant Wenderlich conducted a disciplinary hearing on July 24, 2006, for both misbehavior reports. Id. at 35. Wenderlich denied plaintiff due process during the hearing and sentenced plaintiff to three years in SHU and a two year loss of good time. Id. Plaintiff appealed the result of the hearing to Donald Selsky; on September 20, 2006, Selsky reversed the results of the hearing. Id. at 36. In retaliation for Selsky's decision reversing the hearing determination, defendant Wenderlich instructed defendant Hetrick to immediately commence an administrative segregation hearing against plaintiff. Id. Defendant Henderson commenced the hearing on October 4, 2006, and on November 1, 2006, plaintiff was confined to SHU "indefinitely." Id. Plaintiff appealed the administrative segregation decision to Selsky, claiming due process violations. Id. at 37. Selsky reversed the determination on January 22, 2007. Id.

On January 24, 2007, when plaintiff was being transferred from Elmira to Clinton Correctional Facility ("Clinton"), he was assaulted by defendant J. LaMora. Dkt. No. 1 at 37. To "cover up" the assault, and in retaliation for grievances plaintiff had filed at Elmira "and the fact that [plaintiff] had just received a reversal on all 'false' misbehavior reports and recommendations written against him," defendant J. LaMora issued plaintiff a false misbehavior report. Id. at 38. Plaintiff was transferred to Clinton and placed in SHU. Id. The misbehavior report was "summarily dismissed" by defendant Drown on February 8, 2007. Id. On February 10, 2007, plaintiff was returned to general population after spending 224 days in

SHU "under 'atypical and significant hardship.'" Id. at 38-39.

Plaintiff alleges he was assaulted on seven different occasions in retaliation for filing a grievance against defendant Hart in 2007, as follows:

- April 27, 2007 by defendant Hart
- May 18, 2007 by defendant Hart
- August 20, 2007 by defendants Harden, Reyelle, and Randal Smith
- August 24, 2007 by defendants Randal Smith and Shutts
- August 24, 2007 by defendants Rendle, Shutts, and Bisso
- August 24, 2007 by defendant Rendle, and
- October 21, 2007 by defendants Boulrice and Furnia.

Dkt. No. 1 at 23-24.

Plaintiff also alleges that he received false misbehavior reports and that disciplinary hearings were held to address those misbehavior reports, as follows:

- Misbehavior report on April 24, 2007 from Kevin Hart and George Tamer; subsequent disciplinary hearing conducted by John Miller on May 4, 2007
- Misbehavior report on June 29, 2007 from Casey Strong; subsequent disciplinary hearing conducted by John Miller on July 4, 2007
- Misbehavior report on July 29, 2007 from Scott Ashline; subsequent disciplinary hearing conducted by Stanley Garman on August 10, 2007
- Misbehavior report on July 29, 2007 from George Tamer; subsequent disciplinary hearing conducted by Curtis Drown on August 14, 2007.

Dtk. No. 1 at 31-32.

Plaintiff appears to recognize that events alleged in the complaint which occurred prior to January 25, 2008, are outside the statute of limitations, but argues that he should be allowed to proceed with these claims nonetheless under the continuing-violation doctrine (which plaintiff refers to as the "continuing wrong doctrine").[4] See, e.g., Dkt. No. 1 at 24, 31-33, 44-45. However, the Supreme Court makes clear that the continuing-violation doctrine

---

[4] For example, plaintiff alleges that, under the "continuing wrong doctrine NYS officials including those at Elmira Correctional Facility began a systematic retaliation against plaintiff for his alleged crimes he was incarcerated for, namely an arson of police vehicles . . . and allegations of escape from NYS DOCS and local jail, and his attempts to litigate those to trial." Dkt. No. 1 at 32-33.

does not apply to discrete acts, but only to ongoing circumstances that combine to form a single violation that cannot be said to occur on any particular day. National R.R. Passenger Corp. v. Morgan, 536 U.S. 101, 113-15 (2002). In this case, plaintiff's complaint alleges discreet acts of abuse and retaliation, each traceable to an individual incident, and are not a collection of circumstances forming a single violation. Therefore, plaintiff may not rely on the continuing-violation doctrine for his pre-January 25, 2008, claims. Instead, the basis of each claim must arise out of an event that occurred within the statutory period—namely on or after January 25, 2008.

Since plaintiff is unable to assert the "continuing violation doctrine," all claims that describe events occurring prior to January 25, 2008, are not timely filed and are subject to dismissal. However, a district court may not sua sponte dismiss a prisoner's §1983 action on the basis of the statute of limitations unless it is clear from the face of the complaint that there are no meritorious tolling issues, or the court has provided the plaintiff notice and an opportunity to be heard on the issue. See Abbas, 480 F.3d at 640 (holding that where "the District Court could not tell from the face of [plaintiff's] complaint whether he might have meritorious tolling arguments . . . the District Court should not have dismissed [plaintiff's] complaint on the basis of an anticipated statute-of-limitations defense without granting [plaintiff] notice and an opportunity to be heard."). As set forth below in more detail, plaintiff will be afforded the opportunity to file an amended complaint which demonstrates that the claims which arose prior to January 25, 2008, were timely filed.

**B.    Claims Which Occurred on or after January 25, 2008**

**1.    Excessive Force and Failure to Protect Claims**

The Eighth Amendment's prohibition against cruel and unusual punishment precludes

the "unnecessary and wanton infliction of pain." Gregg v. Georgia, 428 U.S. 153, 173 (1976);

Sims v. Artuz, 230 F.3d 14, 20 (2d Cir. 2000). Inmates enjoy an Eighth Amendment

protection against the use of excessive force and may recover damages for its violation under

§ 1983. Hudson v. McMillian, 503 U.S. 1, 9-10 (1992). To validly assert a violation of the

Eighth Amendment through the use of excessive force, an inmate must prove two

components: (1) subjectively, that the defendant acted wantonly and in bad faith, and (2)

objectively, that the defendants actions violated "contemporary standards of decency."

Blyden v. Mancusi, 186 F.3d 252, 262-63 (2d Cir. 1999) (quotations omitted) (citing Hudson,

503 U.S. at 8).

Eighth Amendment obligations also include the duty to protect prisoners from known

harms. Farmer v. Brennan, 511 U.S. 825, 829 (1970). "The Constitution does not mandate

comfortable prisons but neither does it permit inhumane ones, and it is now settled that the

treatment a prisoner receives in prison and the conditions under which he is confined are

subject to scrutiny under the Eighth Amendment." Id. at 832. Where the inmate is alleging "a

failure to prevent harm, the inmate must show that he is incarcerated under conditions posing

a substantial risk of serious harm." Id. at 834 (citing Helling v. McKinney, 509 U.S. 25, 31-32

(1993)). In Farmer, the Supreme Court set out the two-pronged test that determines when a

failure to protect a prison inmate rises to the level of a constitutional violation. First, the

prisoner must have been "incarcerated under conditions posing a substantial risk of serious

harm." Id. at 834. Second, the prison official must have shown "deliberate indifference" to

the prisoner's safety. Id. Deliberate indifference exists when "the official knows of and

disregards an excessive risk to inmate health or safety; the official must both be aware of

facts from which the inference could be drawn that a substantial risk of serious harm exists,

and he must also draw the inference." Id. at 837; Hines v. Lacy, 189 F.3d 460 (2d Cir. 1999).

In his complaint, plaintiff alleges that on February 12, 2008, while at Clinton, he was escorted to the mental health unit by defendant correctional officers Reyelle and Strack and correctional sergeant Wood, so that plaintiff could meet with social worker Bonner. Dkt. No. 1 at 10. Defendant Bonner advised plaintiff that defendant Lt. Allan had opened plaintiff's outgoing mail, read it, and informed Bonner that plaintiff "sounded suicidal." Id. Plaintiff denied being suicidal. Id. During the meeting, plaintiff told Bonner that he had "prior problems with the three officers escorting him, and that during the course of the escort to the meeting room [they] had threatened him with physical harm when they 'got him to the observation room.'" Id. at 11. Defendant Bonner failed to intervene, but instead admitted plaintiff to the observation room over his objections claiming that "security had her hands tied" and not because she believed that plaintiff was a danger to himself. Id.

Defendants Reyelle, Strack, and Wood escorted plaintiff to the observation room, again threatening and verbally abusing him. Dkt. No. 1 at 11-12. When they arrived in the observation room, defendants Reyelle, Strack, and Wood "intentionally, maliciously and sadistically assaulted and battered" plaintiff, causing serious injuries to plaintiff. Id. at 12-13.

On February 13, 2008, plaintiff was escorted, in handcuffs and a waist chain, by defendants Reyelle, Cooper, and Tyler from the observation room to an interview area to meet with defendant Dr. Berggren. Dkt. No. 1 at 14-15. Plaintiff told defendant Berggren that he had previously been assaulted by defendant Reyelle, showed Dr. Berggren his injuries from the assault, and requested medical attention. Id. at 14-15. Reyelle, Cooper, and Tyler "immediately suspended the interview," escorted plaintiff back to the observation room, and "intentionally, maliciously and sadistically" assaulted plaintiff. Id. at 15. While assaulting

plaintiff, the correctional officers told plaintiff that "we are going to f--k you up now, since we told you not to say anything about yesterday." Id. at 16.  Plaintiff alleges that defendants Giambruno, Bushey, David Trudeau, and Rendle also assaulted plaintiff.  Id. at 17.

Plaintiff claims that he and members of his family had on numerous occasions advised defendant Berggren, Bonner, Artus, and Fischer "of at least 8 other previous assaults by staff" at Clinton, but these defendants failed to protect plaintiff from the "'reasonable foreseeable' attacks by staff" at Clinton.  Dkt. No. 1 at 19.

On January 31, 2008, defendant Randal Smith came to plaintiff's cell to search it, escorted plaintiff in handcuffs to the cell gate and slammed plaintiff into the gate, seriously injuring plaintiff's right shoulder.  Dkt. No. 1 at 21-22.   Plaintiff claims that defendant Rendle and his "beat down crew" had a "vendetta" against plaintiff because in 2007, plaintiff filed a grievance against defendant Hart, a member of the "beat down crew."  Id. at 22-23.

Construed liberally, plaintiff alleges that:  (1) defendants Reyelle, Strack, Wood, Cooper, Tyler, Giambruno, Bushey, David Trudeau, Rendle, and Randal Smith subjected him to excessive force, and (2) defendants Bonner, Dr. Berggren, Artus, and Fischer failed to protect him from known harm, all in violation of plaintiff's rights under the Eighth Amendment. Defendants Reyelle, Strack, Wood,[5] Cooper, Tyler, Giambruno, Bushey, David Trudeau, Rendle, Randal Smith, Bonner, Dr. Berggren, Artus, and Fischer are directed to respond to these allegations.

## 2.    Medical Care Claims

The Eighth Amendment prohibition on "cruel and unusual punishment" also extends to

---

[5]  It is not clear whether these allegations are directed to defendant Thomas Wood or defendant Jerry Wood, since plaintiff refers to Sgt. Wood in this instance.  The Clerk will be directed to serve both Thomas Wood and Jerry Wood.

the provision of medical care.  <u>Hathaway v. Coughlin</u>, 37 F.3d 63, 66 (2d Cir. 1994).  The test

for a § 1983 medical care claim is two-fold.  First, the prisoner must show that the medical

condition to which he was exposed was sufficiently serious.  <u>Farmer</u>, 511 U.S. at 834.

Second, the prisoner must show that the prison official demonstrated deliberate indifference

by having knowledge of the risk and failing to take measures to avoid the harm.  <u>Id</u>.  "[P]rison

officials who actually knew of a substantial risk to inmate health or safety may be found free

from liability if they responded reasonably to the risk, even if the harm ultimately was not

averted."  <u>Id</u>. at 844.

Immediately after the February 12, 2008, assault, plaintiff requested emergency

medical care from defendants Badger, Bentley, Macey, Nurse Waldron, Jane Smith, and

John Smith,[6] but his requests were "summarily denied intentionally . . . to 'cover up'" for the

assault and battery.  Dkt. No. 1 at 13-14.  Plaintiff alleges that he sustained serious injuries

after an assault by staff on February 13, 2008, and although he talked to a nurse after the

attack, he received no medical attention for his injuries.  <u>Id</u>. at 18.  Plaintiff put in daily sick

call requests for the next two weeks, and defendant Nurse Lashway had plaintiff "x-rayed for

broken bones" but no medical treatment was provided to plaintiff.  <u>Id</u>.  Plaintiff further alleges

that defendants Badger, Bentley, Baker, Lee, Johnson, Gillen, and Clemons denied plaintiff

medical care after multiple assaults in 2007 and 2008 to "cover up" the assaults.[7]  Dkt. No. 1

at 25.

Although plaintiff's allegations that he was denied medical care in deliberate

_____

[6]  Plaintiff did not include John Smith in the caption or list of defendants, but alleges wrongdoing by him, therefore John Smith will be considered to be a defendant.

[7]  While not clear from the face of the complaint, the Eighth Amendment medical care claims which occurred prior to January 25, 2008, may be time-barred.

indifference to his serious medical needs, as recounted in the foregoing paragraphs, are sparse at best, he has set forth sufficient allegations to state a plausible claim for medical indifference at this early juncture. Accordingly, defendants Badger, Bentley, Macey, Nurse Waldron, Jane Smith, John Smith, Lashway, Baker, Lee, Johnson, Gillen, and Clemons will be directed to respond to plaintiff's Eighth Amendment medical indifference claims.

### 3. False Misbehavior Reports Issued in Retaliation

A prison inmate has no constitutional right to be free from being falsely accused in a misbehavior report. See, e.g., Boddie v. Schnieder, 105 F.3d 857, 862 (2d Cir. 1997). However, the filing of a false misbehavior report may be actionable if made in retaliation for an inmate's exercise of his constitutional rights. Id. at 862. Construing plaintiff's complaint liberally, plaintiff alleges that he received numerous false misbehavior reports in retaliation for exercising his constitutional rights.

The Second Circuit has cautioned district courts to approach claims of retaliation "'with skepticism and particular care' because 'virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act.'" Davis v. Goord, 320 F.3d 346, 352 (2d Cir. 2003) (quoting Dawes v. Walker, 239 F.3d 489, 491 (2d Cir. 2001)), overruled on other grounds by Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002). To state a plausible claim, a plaintiff asserting a First Amendment retaliation claim must advance "non-conclusory" allegations establishing:

> (1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech [or conduct] and the adverse action.

Davis, 320 F.3d at 352 (quoting Dawes, 239 F.3d at 492). In other words, a plaintiff must

allege that his actions were protected by the Constitution, and that such "conduct was a substantial or motivating factor for the adverse actions taken by prison officials." <u>Bennett v. Goord</u>, 343 F.3d 133, 137 (2d Cir. 2003). Thus, there must be a "causal connection between the protected speech and the adverse action." <u>Gill v. Pidlypchak</u>, 389 F.3d 379, 380 (2d Cir. 2004). "A plaintiff cannot state a retaliation claim in wholly conclusory terms, but rather, must provide a pleading that is 'supported by specific and detailed factual allegations.'" <u>Anderson v. Lapolt</u>, No. 07-CV-1184, 2009 WL 3232418, at *5 (N.D.N.Y. Oct. 1, 2009) (quoting <u>Friedl v. City of N.Y.</u>, 210 F.3d 79, 85-86 (2d Cir. 2000)); <u>see also</u> <u>Sawyer v. Jowers</u>, No. 2:08-CV-0186, 2008 WL 4791557, at *6 (N.D. Tex. Oct. 31, 2008) ("To state a claim of retaliation, the inmate must allege more than his personal belief that he is the victim of retaliation. Conclusory allegations of retaliation are not sufficient; the plaintiff must [allege facts] from which retaliation may plausibly be inferred"). "[A] complaint which alleges retaliation in wholly conclusory terms may safely be dismissed on the pleadings alone." <u>Flaherty v. Coughlin</u>, 713 F.2d 10, 13 (2d Cir. 1983). Finally, even if plaintiff makes the appropriate showing, defendants may avoid liability if they demonstrate that they would have taken the adverse action even in the absence of the protected conduct. <u>Bennett</u>, 343 F.3d at 137.

Plaintiff alleges multiple instances of retaliation, as follows. On January 30, 2008, defendants Rendle and Defayette issued plaintiff a false misbehavior report "in retaliation of plaintiff filing grievances, pursuing lawsuits and other activities protected by the constitution against Rendle[,] Defayette and other members of Rendle's E-block 'beat down crew.'" Dkt. No. 1 at 26-27. On February 13, 2008, defendants Tyler and Reyelle issued plaintiff a false misbehavior report "in an attempt to mitigate or 'cover-up' the assault and battery inflicted on

plaintiff." Id. at 28. The misbehavior report was also in retaliation for plaintiff filing grievances and lawsuits and for "other activities protected by the constitution." Id. at 29. On February 14, 2008, defendant Robert Trudeau issued plaintiff a false misbehavior report in retaliation for plaintiff filing grievances and lawsuits and for "other activities protected by the constitution." Id. at 30. Plaintiff also alleges that he received false misbehavior reports "in retaliation" from (1) William Allan and Livsey on April 3, 2008; (2) Jason Pelkey and David Trudeau on April 7, 2008; (3) Allan and Livsey; on April 15, 2008; (4) Jill Perry on June 9, 2008; (5) Richard Florentine on November 2, 2008; (6) Livsey and Allan on July 28, 2009; (7) Strader and Young on July 7, 2010; (8) Mahuta, Crusie, and Kelly on November 24, 2010; (8) Jerry Wood on November 27, 2010; and (9) Allan and Livsey on December 6, 2010. Id. at 41-42.

In this case, plaintiff's conclusory assertions that all of the aforesaid misbehavior reports were retaliatory in nature, without more, fail to state a plausible claim for retaliation and are therefore dismissed without prejudice. See Bouknight v. Shaw, No. 08 Civ. 5187, 2009 WL 969932, at *6 (S.D.N.Y. Apr. 6, 2009) (stating that inmate's conclusory assertion that correction officer "wrote me up for revenge" was insufficient to state plausible retaliation claim, and that plaintiff had "failed to allege the requisite causal connection between his filing of a grievance and Officer Rivera's writing him up for an infraction").

### 4.    Due Process

Plaintiff asserts that his procedural due process rights were violated during the course of various disciplinary hearings. To successfully state a claim under § 1983 for denial of due process arising out of a disciplinary hearing, a plaintiff must show that he or she both (1) possessed an actual liberty interest, and (2) was deprived of that interest without being

afforded sufficient process.  <u>See</u> <u>Tellier v. Fields</u>, 260 F.3d 69, 79-80 (2d Cir. 2000) (citations omitted); <u>Hynes v. Squillace</u>, 143 F.3d 653, 658 (2d Cir. 1998); <u>Bedoya v. Coughlin</u>, 91 F.3d 349, 351-52 (2d Cir. 1996).

Plaintiff claims that defendant Drown was the hearing officer at plaintiff's February 7, 2008, disciplinary, during the course of which Drown denied plaintiff due process.  Dkt. No. 1 at 27.  Plaintiff was found guilty at the hearing and sentenced to seven months (two months suspended) in the Special Housing Unit ("SHU") and six months loss of good time.  <u>Id</u>. Hearing officer, defendant Scott Drollette,[8] denied plaintiff due process at a disciplinary hearing which was held on February 27 through March 3, 2008.  <u>Id</u>. at 29.  Defendant Drollette found plaintiff guilty of the charges and sentenced him to 120 days in SHU and four months loss of good time.  <u>Id</u>. at 28-29.   After plaintiff received a misbehavior report on February 14, 2008, defendant Randy LaMora, the hearing officer, denied plaintiff due process, and sentenced plaintiff to 60 days in SHU.  <u>Id</u>. at 30-31.   At a disciplinary hearing conducted in response to a misbehavior report issued on March 21, 2008, defendant John Miller denied plaintiff due process during the course of the hearing; Miller sentenced plaintiff to 30 days in SHU.  <u>Id</u>. at 41.

Plaintiff also alleges that his right to due process was violated at other disciplinary hearings by the following defendants:

- • Disciplinary hearing conducted by Randy LaMora on May 9, 2008
- • Disciplinary hearing conducted by James Facteau on April 13, 2008
- • Disciplinary hearing conducted by Facteau on May 7, 2008
- • Disciplinary hearing conducted by Uhler on June 24, 2008
- • Disciplinary hearing conducted by defendant LaPine on August 5, 2009

---

[8] Plaintiff did not include Scott Drollette in the caption or list of defendants, but alleges wrongdoing by him, therefore the Court will consider Scott Drollette to be a defendant.

- Disciplinary hearing conducted by Miller on July 12, 2010
- Disciplinary hearing conducted by Lacy on December 6, 2010
- Disciplinary hearing conducted by Lacy on December 29, 2010

Dkt. No. 1 at 41-42.

Plaintiff has alleged the loss of his due process rights in a conclusory fashion. His complaint fails to allege any specific infirmities in any of the disciplinary hearings and fails to allege any facts from which to even infer a plausible due process claim. Plaintiff's due process claims arising from the disciplinary hearings are therefore dismissed without prejudice.[9] See Iqbal, 129 S. Ct. at 1949 ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").

### 5. Interference with Mail and Access to the Courts

Plaintiff alleges that on January 31, 2008, he "discovered" that defendant Defayette was obstructing plaintiff's legal mail resulting in "missed deadlines and ultimate dismissal of those cases." Dkt. No. 1 at 21. Defayette interfered with plaintiff's mail "in retaliation for an incident that occurred in August 2007." Id. On February 12, 2008, defendants Allan and Livsey opened and read plaintiff's outgoing mail without authorization from the superintendent, or any cause to believe that anything illegal was contained therein. Id. at 25.

---

[9] Plaintiff alleges that, as a result of the disciplinary hearings held on February 7, 2008 by defendant Drown and on February 27, 2008 by defendant Drollette, plaintiff suffered a loss of good time. See Dkt. No. 1 at 27-29. Plaintiff is advised that since he has not demonstrated that his loss of good time credits has been invalidated, the "favorable termination" rule of Heck v. Humphrey, 512 U.S. 477 (1994), would bar prosecution of plaintiff's claims relating to his disciplinary sentence unless plaintiff indicates that he was willing to forever forego a challenge to the loss of good time alleged in his pleading. See Peralta v. Vasquez, 467 F.3d 98, 104 (2d Cir. 2006).

Plaintiff claims that defendants Allan and Livsey did so in retaliation for plaintiff filing previous grievances and lawsuits. Id. Between July 2007 until the present, defendants Bisso, Hicks, Clancy, Allan, Ayotte, DuPree, Stuart, Boulrice, Darlene Waldron, Cayea, Livsey, Perry, Rendle, Defayette, Harden, Terry, Randal Smith, and Shutts, "obstructed plaintiff's legal mail and grievances in retaliation for him filing grievances and lawsuits" which caused plaintiff to "miss legal deadlines, obstructed filings and services in totality, disrupted his communications to his attornies [sic] and the courts, so that those filings were not made, and defendants not served and barred him or caused outright dismissals in various criminal and civil actions." Id. at 44-45. Construed liberally, plaintiff alleges that the aforesaid defendants interfered with his legal mail and denied him access to the courts in violation of his rights under the First Amendment. Without taking a position on these claims, defendants Defayette, Allan, Livsey, Bisso, Hicks, Clancy, Ayotte, DuPree, Stuart, Boulrice, Darlene Waldron, Cayea, Perry, Rendle, Harden, Terry, Randal Smith, and Shutts are directed to respond to plaintiff's claims regarding interference with his mail and access to the courts.[10]

### 6. Interference with Grievances

Between July 2007 until the present, defendants Brousseau, Artus, LaValley, Garman, and Bisso, have "violated plaintiff's first amendment rights directly, and by way of retaliation for plaintiff filing grievances and pursuing lawsuits [and his] fourteenth amendment rights [by] intentionally obstructing the Inmate Grievance Program at Clinton." Dkt. No. 1 at 42-43. However, there is no constitutional right of access to the established inmate grievance program. Davis v. Buffardi, No. 0:01-CV0285, 2005 WL 1174088, at *3 (N.D.N.Y. May 4,

---

[10] It should be noted that some of these claims could be time-barred.

2005) (Magnuson, J.) ("[P]articipation in an inmate grievance process is not a constitutionally protected right."); Shell v. Brzezniak, 365 F. Supp. 2d 362, 369-70 (W.D.N.Y.2005) ("[I]nmate grievance programs created by state law are not required by the Constitution and consequently allegations that prison officials violated those procedures does not give rise to a cognizable § 1983 claim."); Cancel v. Goord, No. 00. CIV.2042, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001) ("[I]nmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983."). Therefore, to the extent that plaintiff alleges that defendants Brousseau, Artus, LaValley, Garman, and Bisso interfered with his ability to file grievances, plaintiff's claim fails as a matter of law as is dismissed with prejudice.

## IV.    Conclusion

For the reasons set forth above, plaintiff's claim that defendants Brousseau, Artus, LaValley, Garman, and Bisso interfered with his ability to file grievances is dismissed with prejudice.

Additionally, the following claims are dismissed from this action without prejudice as either time-barred, or for failure to state a claim, as more specifically set forth above:  (a) plaintiff's claims which accrued prior to January 25, 2008; (b) plaintiff's retaliation claims against defendants Rendle, Defayette, Tyler, Reyelle, Robert Trudeau, Allan, Livsey, Pelkey, David Trudeau, Perry, Florentine, Strader, Young, Mahuta, Cruise, Kelly, and Jerry Wood; and (c) plaintiff's due process claims against defendants Drown, Drollette, Randy LaMora, John Miller, Facteau, Uhler, LaPine, and Lacy.  In light of plaintiff's pro se status, should he wish to pursue his action with respect to the aforesaid claims or defendants that have been dismissed without prejudice, he may submit an amended complaint within thirty days

demonstrating a basis upon which the aforesaid claims may proceed.

If plaintiff submits an amended complaint, he is strongly encouraged (but not required) to the greatest extent possible to include in his amended complaint the alleged acts of misconduct and the name of each individual who participated in the misconduct as well as facts which would establish how each of the named defendants were personally involved in the alleged constitutional or statutory violations. Plaintiff is advised that the amended complaint will completely replace the prior complaint in the action. Therefore, he should set forth all of his claims against each of his defendants in a manner that complies with the requirements of this Decision and Order and Federal Rules of Civil Procedure 8 and 10.[11] No portion of any prior complaint shall be incorporated into his amended complaint by reference. As to any claims that have been dismissed as time-barred, the plaintiff shall demonstrate that the claims were timely filed.

If, after a period of thirty days, plaintiff has not submitted an amended complaint, the following will occur: (1) the aforesaid retaliation, due process, and time-barred claims will be dismissed without prejudice and without further order, and (2) service of the complaint on the remaining defendants as to the remaining claims will be directed.

Therefore, it is

ORDERED that

1. Plaintiff's in forma pauperis application is GRANTED;[12]

2. The Clerk of the Court shall provide the Superintendent of the facility that plaintiff

---

[11] Plaintiff is also reminded that any amended complaint submitted will be subject to review pursuant to 28 U.S.C. §§ 1915(e) and 1915A.

[12] Plaintiff should note that, although his application to proceed in forma pauperis has been granted, he will still be required to pay fees that he may incur in this action, including copying and/or witness fees.

has designated as his current location with a copy of plaintiff's authorization form and notify that official that plaintiff has filed this action and is required to pay the entire statutory filing fee of $350.00 pursuant to 28 U.S.C. § 1915;

3. The Clerk of the Court shall provide a copy of plaintiff's authorization form to the Financial Deputy of the Clerk's Office;

4. Plaintiff's claim that defendants Brousseau, Artus, LaValley, Garman, and Bisso interfered with his ability to file grievances is DISMISSED with prejudice for failure to state a claim;

5. With respect to the claims and/or defendants that have been dismissed without prejudice, as more fully set forth above, plaintiff may within thirty days of the filing date of this Decision and Order, submit an amended complaint which demonstrates a legal basis for continuing this action as to those claims and/or defendants;

6. If plaintiff submits an amended complaint in accordance with the terms of this Decision and Order, the Clerk shall forward the file for further review;

7. If plaintiff fails to submit an amended complaint within thirty days as set forth above, the following claims and defendants will be dismissed without prejudice without further order:

(a) plaintiff's claims which accrued prior to January 25, 2008;[13]

(b) plaintiff's retaliation claims against defendants Rendle, Defayette, Tyler, Reyelle, Robert Trudeau, Allan, Livsey, Pelkey, David Trudeau, Perry, Florentine, Strader, Young, Mahuta, Cruise, Kelly, and Jerry Wood; and

---

[13] These claims are set forth in Section III.A., supra. Moreover, because the only claims against them arose, if at all, before January 25, 2008, should plaintiff be unable to demonstrate that these claims are timely, the following defendants will be dismissed as well: Amadio, Carine, Wenderlich, Hetrick, Henderson, J. LaMora, Hart, Furnia, Tamer, Strong, and Ashline.

(c) plaintiff's due process claims against defendants Drown, Drollette, Randy LaMora, John Miller, Facteau, Uhler, LaPine, and Lacy;

8.     If plaintiff fails to submit an amended complaint within thirty days as set forth above, the Clerk of the Court shall issue summonses and forward them, along with copies of the complaint, to the United States Marshal for service upon the remaining defendants, namely:  William Allan, Dale Artus, Robert Ayotte, Dawn Badger, Heath Baker, Rebecca Bentley, Dr. Berggren, William Bisso, Kelly Bonner, Jody Boulrice, Melody Cayea, Daniel Clancy, Lisa Clemons, James Cooper, Scott Defayette, Ronald DuPree, Brian Fischer, Michael Giambruno, Mary Gillen, Robert Harden, Kevin Hicks, Vonda Johnson, Amber Lashway, Kang Lee, Margaret Livsey, Leeward Macey, Jill Perry, Richard Rendle, John Reyelle, Bruce Shutts, Jane Smith, Randal Smith, Todd Strack, Jamie Stuart, Shawn Terry, David Trudeau, James Tyler, Darlene Waldron, N. Waldron, Jerry Wood, Thomas Wood, John Smith, and Scott Drollette.[14]  The Clerk shall also forward a copy of the summons and complaint by mail to the Office of the New York State Attorney General, together with a copy of this Decision and Order;

9.  Upon being served with the complaint, defendants or their counsel shall file a formal response to plaintiff's complaint as provided for in Rule 12 of the Federal Rules of Civil Procedure;

10.  All pleadings, motions and other documents relating to this action be filed with the Clerk of the United States District Court, Northern District of New York, 7th Floor, Federal Building, 100 S. Clinton St., Syracuse, New York 13261-7367.  Any paper sent by a party to

---

[14]  If plaintiff does not submit an amended complaint as directed above, other than these defendants for whom service is directed, all remaining defendants shall be dismissed for the reasons set forth above.

the Court or the Clerk must be accompanied by a certificate showing that a true and correct copy of it was mailed to all opposing parties or their counsel. Any document received by the Clerk or the Court which does not include a certificate of service showing that a copy was served upon all opposing parties or their attorneys will be stricken from the docket. Plaintiff must comply with any requests by the Clerk's Office for any documents that are necessary to maintain this action. All parties must comply with Local Rule 7.1 of the Northern District of New York in filing motions. Plaintiff is also required to promptly notify the Clerk's Office and all parties or their counsel of any change in plaintiff's address; his failure to do so may result in the dismissal of this action. All motions will be decided on submitted papers without oral argument unless otherwise ordered; and

11. The Clerk serve a copy of this Decision and Order on plaintiff.

IT IS SO ORDERED.

_____
United States District Judge

Dated: July 13, 2011
Utica, New York.